GREENE MOTOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4984. Promulgated June 27, 1945.

*Henry H. Mathis, Esq.*, for the petitioner.
*Cecil H. Haas, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge*: This controversy involves deficiencies in income tax for the calendar years 1939, 1940, and 1941, and declared value excess profits tax for the calendar years 1939 and 1940, as follows:

| Year | Income tax deficiency | Declared value excess profits tax deficiency |
|------|-----------------------|----------------------------------------------|
| 1939 | $632.24 | $710.05 |
| 1940 | 595.00 | 1,949.75 |
| 1941 | 90.91 | |

The contested issues are: (1) Whether the respondent properly included in petitioner's gross income for 1939 balances totaling $3,149.06 on December 31, 1938, in so-called reserves carried on petitioner's books and never included in petitioner's taxable income, and (2) whether petitioner is entitled to deduct in 1940 the sum of $1,303.44 disbursed in that year for attorneys' and accountants' fees. All facts were stipulated.

The stipulation, except formal parts, reads:

1. Petitioner, Greene Motor Company, is a corporation organized in 1931 and existing pursuant to the laws of the State of Kentucky. It is engaged in the business of dealing in automobiles at Harlan, Kentucky. Its returns for the calendar years 1939, 1940 and 1941 were prepared on the accrual basis, and were made to the Collector of Internal Revenue for the District of Kentucky.

2. Petitioner, on its books, carried so-called reserve accounts designated as unearned interest, service contract deposits, and finance charges, in which there were the following credit balances as at the end of each of the years shown:

|                             | 1938      | 1939      | 1940      | 1941      |
| --------------------------- | --------- | --------- | --------- | --------- |
| Unearned interest           | $3,564.00 | $3,357.00 | $5,304.00 | $7,250.00 |
| Service contract deposits   | 319.00    | 1,006.70  | 1,267.57  | 1,628.58  |
| Finance charges collected   | 620.48    | 1,269.27  | 747.55    | 854.54    |

Respondent for each of the taxable years involved herein, namely: 1939, 1940 and 1941, has disallowed as deductions taken by petitioner in its said returns for those years the respective amounts added during each of said years to said so-called reserves by petitioner, as not being properly treated under the accrual method, which disallowances are not being contested herein by petitioner. Of said balances as at the end of 1938, appearing above, the sums of $319.00, shown in the so-called reserve for service contract deposits, and of $620.48, shown in the so-called reserve for finance charges collected, had never been included in income reported by petitioner, and were added by respondent to petitioner's income for 1939; of said balance of $3,564.00, shown in the so-called reserve for unearned interest, as at the end of 1938, appearing above, the sum of $1,147.42 was disallowed by respondent as a deduction in petitioner's income tax return for 1938, but the remainder of said balance, amounting to $2,416.58 was never included in income reported by petitioner; after subtracting the decrease of $207.00 in said account during 1939 from said $2,416.58, the net sum of $2,209.58 was arrived at, which was added by respondent to petitioner's income for 1939; the inclusion of said sums of $319.00, $620.48 and $2,209.58 by respondent in petitioner's income for the calendar year 1939 are being contested herein by petitioner. For the year 1938 and prior years, petitioner's books of account were kept and its income tax returns were made upon the accrual basis, except as to said so-called reserves.

3. In said income tax return for 1940, petitioner took a deduction for accountants' and attorneys' fees and expenses paid in the total amount of $1,303.44, which was disallowed by respondent. Said accountants' and attorneys' fees and expenses were incurred and paid by petitioner for services rendered by certain accountants and/or attorneys in representing petitioner before the Bureau of Internal Revenue in connection with liability of petitioner, as asserted by respondent and/or his predecessor, for deficiencies in income taxes and excess profits taxes for the years 1934 to 1938, inclusive, together with penalties as provided by sections 293 (b) and 145 of the Revenue Act of 1938, and corresponding provisions of earlier revenue laws, which asserted liability was settled and disposed of as the result of the acceptance by the respondent and/or his

predecessor of an offer in compromise dated January 15, 1941, submitted by petitioner to respondent and/or his predecessor in terms and figures, in part, as follows:

"The following offer in compromise is submitted to you by the undersigned:

"Charges of violation of law or failure to meet an internal revenue obligation have been made against the proponent as follows: Making false and fraudulent income tax returns for years of 1934, 1935, 1936, 1937 and 1938, and evasion of the payment of income and excess profits taxes for the said years, together with penalty and interest.

\* \* \* \* \* \* \*

"To secure the release of the proponent from the liability resulting from the violation or failure above specified, the sum \* \* \* is hereby tendered voluntarily with request that it be accepted in compromise of the said liability, \* \* \*, together with any criminal liability incident thereto."

The above-described offer in compromise was thereafter, and in due course, on February 22, 1944, accepted by the respondent and/or his predecessor, with the advice and consent of the Secretary of the Treasury.

4. With respect to the year 1941, petitioner claims a net operating loss carryback of $5,316.27 from the year 1942 pursuant to section 122 of the Internal Revenue Code. By a 30-day letter dated August 31, 1944, the Internal Revenue Agent in Charge informed petitioner that sundry adjustments, including the adjustments relating to certain of the issues in this case, disclosed that petitioner sustained a net operating loss carry-back in the sum of $4,694.90 for 1942. It is agreed that said amount of $4,694.90, may be substituted as the correct net operating loss carry-back from 1942 to 1941, instead of $5,316.27 as claimed in the petition.

The first issue presents the question whether the respondent has properly added to petitioner's 1939 income the amount of $3,149.06 carried by petitioner in so-called reserves as of December 31, 1938. Petitioner concedes that under its accrual method of keeping its books the so-called reserves were improper and that the amount of $3,149.06 was never returned as income. Petitioner, however, contests the respondent's right to include in its 1939 income amounts claimed as a deduction in its 1938 return and erroneously allowed in that year by the respondent.

Income taxes are generally assessed on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. In *Estate of William Steele*, 34 B. T. A. 173, 176, this Court said:

We have frequently pointed out that each year stands on a separate basis in the tax law and that an error made in computation of the tax for one year can not be corrected by making an erroneous computation under the law of a later year. *Union Metal Manufacturing Co.*, 1 B. T. A. 395; *MacMillan Co.*, 4 B. T. A. 251; *Cooper-Brannan Naval Stores Co.*, 9 B. T. A. 105; *Bank of Commerce*, 10 B. T. A. 73; *Houston Baseball Association*, 24 B. T. A. 69; *Virginia-Lincoln Furniture Corporation* v. *Commissioner*, 56 Fed. (2d) 1028.

It is true that the stipulation in the present case contains no statement to the precise effect that respondent was aware of petitioner's action in deducting the additions to the so-called reserves during the

prior year—as was found as a fact in the *Steele* case, *supra*. Nevertheless, it seems equally clear that respondent actually did know here what petitioner was doing in deducting the so-called reserve additions, at least for 1938. He disallowed part of the unearned interest deduction for that year. Moreover, significantly, respondent does not now take the position that he was not fully advised of the nature of these earlier deductions when they were allowed. In fact, he apparently makes no contention that the amounts deducted as such reserves were income in 1939. He attempts to justify his action, rather, on the ground that if the erroneous deductions are not included in petitioner's gross income for 1939 they will never be taxed. Respondent relies principally on *Schuman Carriage Co., Ltd.*, 43 B. T. A. 880; *William Hardy, Inc.* v. *Commissioner*, 82 Fed. (2d) 249, and *Comar Oil Co.* v. *Helvering*, 107 Fed. (2d) 709. These cases are distinguishable. In the *Schuman Carriage Co.* case, *supra*, the taxpayer was on a hybrid system of accounting, i. e., part accrual and part cash. The respondent determined that the taxpayer's accrual basis should be made complete, and, accordingly, adjusted the return. We approved the respondent's action. The case of *William Hardy, Inc.* v. *Commissioner*, *supra*, involved a change from the cash to the accrual basis, with the proper adjustments to reflect the true income. The *Comar Oil Co.* case is also distinguishable. A double deduction was involved there. Moreover, the issue arose there on the partial disallowance of an asserted deduction which, of course, was a matter of legislative grace, while the issue in the present proceeding involves not a disallowance of a deduction, but the propriety of increasing the income of one year by an amount erroneously excluded from income in a prior year.

Petitioner has consistently followed an accrual method of accounting. No change in that method was requested or made. The amounts of the so-called special reserves improperly deducted and allowed in the prior year or years unlawfully reduced taxable income of the petitioner for those respective years only. Those amounts were properly includible in income of the earlier years—not of the taxable year. *Peabody Coal Co.*, 18 B. T. A. 1081; affd., 55 Fed. (2d) 7; *G. M. Standifer Construction Corporation*, 30 B. T. A. 184; *Estate of William Steele*, *supra*. Cf. *S. Rossin & Sons, Inc.*, 40 B. T. A. 1274; reversed, 113 Fed. (2d) 652. We sustain the petitioner on the first issue.

Petitioner also contests respondent's disallowance of the deduction of $1,303.44, paid in the taxable year 1940 for attorneys' and accountants' fees and claimed by petitioner as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code.

These fees were paid as compensation for services rendered by accountants and/or attorneys in representing petitioner before the Bureau of Internal Revenue in connection with its asserted liability for income tax and excess profits tax deficiencies and penalties under sections 293 (b) and 145 (b) of the Revenue Act of 1938,[1] and corresponding sections of earlier revenue laws, which liability was settled and disposed of by compromise.

The liability for the deficiencies in tax, together with that for the fraud penalties authorized by section 293 (b), *supra*, is purely a civil and not a penal liability. Such penalties are not imposed as "personal punishment on violators." See *Commissioner* v. *Heininger*, 320 U. S. 467. Rather they are "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering* v. *Mitchell*, 303 U. S. 391. The expenses in connection with settling that liability are to be considered as "ordinary and necessary," we think, under the authority of *Commissioner* v. *Heininger*, *supra*, and *Bingham* v. *Commissioner*, 325 U. S. 365. In the latter the Supreme Court approved the deduction, as ordinary and necessary "non-trade or non-business" expense, of legal expenses incurred in contesting unsuccessfully a deficiency in income tax. In *Longhorn Portland Cement Co.*, 3 T. C. 310, we allowed deduction of attorneys' fees and legal expenses paid in compromising a suit brought by the State of Texas to recover penalties for the violation of state antitrust law. We also allowed deduction of the amounts paid the State of Texas in compromise of the action. The Commissioner acquiesced in our allowance of the attorneys' fees and expenses, though he appealed the allowance for the amounts paid in compromise, and we were on that question reversed, *Commissioner* v. *Longhorn Portland Cement Co.*, 148 Fed. (2d) 276.

The penalties authorized by section 145 (b), *supra*, however, are penal and not merely civil liabilities. The offer of compromise, which was accepted, contains the clause, "together with any criminal liability incident thereto." This indicates that at least a part of the

---

[1] SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY.

\* \* \* \* \* \* \*

(b) FRAUD.—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.

SEC. 145. PENALTIES.

\* \* \* \* \* \* \*

(b) Any person required under this title to collect, account for and pay over any tax imposed by this title, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution.

contested expense was incurred in connection with the compromise of possible liability under that section. The question arises whether the attorneys' and accountants' fees incurred in representation ending in such compromise should be allowed. Various cases have allowed attorneys' fees incurred in successful defense of criminal prosecutions, and various other cases have disallowed the deduction where the defense was unsuccessful and conviction followed. Citation of such cases is considered unnecessary here. No case, apparently, has yet passed upon the allowance of such attorneys' or accountants' fees, incurred where mere possibility of criminal liability, without prosecution having been instituted, was compromised by payment. However, in the light of the statutes here involved, and *Commissoner* v. *Heininger*, *supra*, we think the entire deduction should be allowed. The matter was obviously compromised by the respondent under the terms of section 3761 (a) of the Internal Revenue Code.[2] That section permits the Commissioner to compromise "any civil or criminal case arising under the internal revenue laws." This must, however, be "prior to reference to the Department of Justice for prosecution * * *." Therefore, the fact of compromise by the Commissioner, and the generality of the language of the offer, "any criminal liability incident thereto," indicate that no criminal prosecution of the petitioner had been instituted. We are asked, nevertheless, to deny the deduction and thus to place the petitioner in the same category with those who, because of conviction, have been so denied.

In the *Heininger* case the Supreme Court, in allowing deduction of costs of an unsuccessful defense against a fraud order issued by the Post Office Department, said:

The Bureau of Internal Revenue, the Board of Tax Appeals, and the federal courts have from time to time, however, narrowed the generally accepted meaning of the language used in Section 23 (a) in order that tax deduction consequences might not frustrate sharply defined national or state policies proscribing particular types of conduct. A review of the situations which have been held to belong in this category would serve no useful purpose for each case should depend upon its peculiar circumstances. A few examples will suffice to illustrate the principle involved. Where a taxpayer has violated a federal or a state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment. Similarly, one who has incurred expenses for certain types of lobbying and political pressure activities with a view to influencing federal legislation has been denied a deduction. And a taxpayer who has made payments to an influential party precinct captain in order to obtain a state printing contract has not been allowed to deduct their amount from gross income. It has never

---

[2] SEC. 3761. COMPROMISES.

(a) AUTHORIZATION.—The Commissioner, with the approval of the Secretary, or of the Under Secretary of the Treasury, or of an Assistant Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General may compromise any such case after reference to the Department of Justice for prosecution or defense.

been thought, however, that the mere fact that an expenditure bears a remote relation to an illegal act makes it non-deductible. The language of Section 23 (a) contains no express reference to the lawful or unlawful character of the business expenses which are declared to be deductible. And the brief of the government in the instant case expressly disclaims any contention that the purpose of tax laws is to penalize illegal business by taxing gross instead of net income. * * *

The above expression from the Supreme Court, in our opinion, precludes disallowance of the deduction sought by the petitioner here, for two reasons: First, it may not with logic be said that the tax deduction consequences here frustrate any sharply defined national or state policy proscribing conduct. As the Court points out, section 23 (a) does not refer to the lawful or unlawful character of business expenses; that is, it makes no distinction in that respect.[3] It is only on "sharply defined" public policy that the distinction has been built up. Here we find, however, that Congress has, in section 3761, authorized the Commissioner to settle criminal cases. Public policy has long been recognized as the basic reason for the favor which compromises find in the law, for an end to litigation is considered good for the public weal. *Williams* v. *First National Bank*, 216 U. S. 595; *Miller* v. *Pyrites Co.*, 71 Fed. (2d) 491. In *United States* v. *Knabe*, 147 Fed. 802, action was brought by the United States, and the defendants pleaded a compromise entered into with the Secretary of the Treasury, under his statutory authority to compromise liability upon the bond of an internal revenue collector. The court, in sustaining the defense, said:

The law favors compromises and settlement of disputed property and pecuniary rights, as well where the government is a party as where the litigation is solely between private individuals. When propositions of compromise of such disputes are made to the government and accepted by it, the courts will apply the same rules for ascertaining their meaning as govern in construing like contracts between man and man. * * *

How, then, may we say that the allowance of the deductions here involved would be contrary to public policy; for if, in the interest of public policy, the Commissioner may settle a criminal matter, is it not equally within sound public policy for the taxpayer to take part in the settlement? To deny the deduction here, relying upon cases involving conviction and not compromise, would be to neglect altogether the principle of public policy involved in compromise, and to disallow the expense involved in doing precisely what section 3761 says the tax-

---

[3] In the *Heininger* case, the Circuit Court of Appeals for the Seventh Circuit, in referring to such distinction, said:
"* * * Congress has not said that that discrimination shall be made. Neither has the Department had the hardihood to make such a material change by way of its regulations. If this change is to be made and the policy altered, let Congress do it. Congress would need only to add the word 'legal' before the word 'trade' in the third line of Section 23 (a) (1).
"We are asked, in the guise of construing the words 'ordinary and necessary,' to amend the statute. In other words, to engage in a little judicial legislation. We decline the invitation."

payer may do—compromise his criminal matters involved before the Internal Revenue Bureau. In addition, it would, since a successful defense has prevented the disallowance of deduction, be on the basis of an assumption of guilt of the petitioner, when no prosecution has ever been initiated, and only "any" criminal liability was compromised. This matter appears to us to involve no frustration of any public policy, sharply defined or otherwise, but, on the contrary, to be consistent therewith.

Moreover, we presume that the respondent is of the same opinion here as in the *Heininger* case, in which the opinion of the Supreme Court says he expressly disclaimed "any contention that the purpose of tax laws is to penalize illegal business by taxing gross instead of net income"; yet, if any deductions from gross income are to be allowed, is any more vital than the expense of attention to tax matters before the Internal Revenue Bureau?

Again, we note that in the opinion of the Supreme Court, "It has never been thought, however, that the mere fact that an expenditure bears a remote relation to an illegal act makes it non-deductible." We see the expenditure here as remote from criminal liability. There may or may not have been such liability. "Any" is the term used in the offer of compromise, and it would be altogether unrealistic, and contrary to general law, to view language used in a compromise as any admission of guilt, when under hornbook law evidence may not be received as to statements made in efforts to compromise litigation. There is much difference in directness of connection of criminal guilt as proven by conviction in a court of law, with the expense of defense of such criminal case, and connection between a mere assertion by the Commissioner of such liability (which he had not even referred to the Attorney General for prosecution) and payment of attorneys and accountants who represented the petitioner in that and other matters. We are not considering here any money paid to the Government in settlement of the alleged illegal criminal liability, but only the expense of employing the attorneys and accountants in the matter before the Internal Revenue Bureau. The connection between criminal liability and expense paid must here be traced through the payments to attorneys and accountants employed, through a prosecution which had not been instituted, and to a conviction which had never been suffered—for had there been a successful defense of an actual prosecution, deduction would follow.

The case of *Helvering* v. *Superior Wines & Liquors, Inc.*, 134 Fed. (2d) 373, relied on by the respondent, was one of those, alleged conflict with which caused certiorari to be granted in the *Heininger* case. We think the opinion of the Supreme Court in the latter case indicates lack of harmony between the views of the Supreme Court and

the Circuit Court on the subject dealt with by the latter. In fact, reading of the opinion discloses that, though the amount of attorneys' fees involved was included in the amount refused deduction by the court, the discussion is only as to the penalties involved and the expense of payment thereof.[4] Moreover, the case is distinguishable in that there appears in effect an admission of violation of law, for in the offer of compromise it was stated that the "violation was due to 'ignorance of regulations and procedure.' " Here, there appears no violation of law, but only some charge and compromise of "any criminal liability." In any event, with respect for the opinion of the Circuit Court, we decline to follow where in that case it leads.

We conclude and hold that the respondent erred in disallowing the deduction claimed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

LEECH, *J.*, dissenting on the second point: The Commissioner has determined deficiencies in income taxes against petitioner for several years and has asserted admittedly criminal and civil fraud liabilities, under sections 145 and 293 (b) of the Internal Revenue Code, respectively. Under section 3761 of the code, petitioner obtained a release from both these liabilities by paying an amount of money to the Commissioner. True, no arrest or conviction had occurred, otherwise no release, under section 3761, could have been secured from the Commissioner. Let us assume a situation that is by no means unlikely. Suppose that in order to escape possible, even probable, conviction of fraud, the attendant adverse publicity, and even imprisonment of its officers under section 145 (b), the taxpayer had paid to the Commissioner an amount aggregating the total of the deficiencies, interest thereon, the civil fraud penalties, *and* $10,000, assuming that was the amount of the maximum fine that could have been imposed against its officers under section 145 (b). In that picture could it reasonably be held that such a release was "too remote" from criminal liability to base a disallowance of the deduction of either the $10,000 or the expenses of the taxpayer in negotiating such a release? I think not. Nor does the Supreme Court in either *Commissioner* v. *Heininger*, 320 U. S. 467, or *Bingham* v. *Commissioner*, 325 U. S. 365, support of deduction of either item.[1] Yet, precisely that, in effect, is the

---

[4] The court's conclusion is stated:

"* * * Therefore the money which a wholesale liquor dealer is required to pay as a result of violating the statute either by way of compromise of the penalties or in satisfaction of judgment on account thereof can not be deducted from income as an ordinary or necessary expense of conducting the wholesale liquor business."

[1] Following the excerpts from the opinion of the Supreme Court in the *Heininger* case, *supra*, quoted in the majority opinion, appears the following: "If the respondent's litigation expenses are to be denied deduction, it must be because allowance of the deduction would

holding in the majority opinion. True the only issue here is the propriety of the deduction of the expenses. They are expressly allowed. But the same treatment, I think, would have to be accorded to the ten thousand dollar item. The two items are on the same footing. *Burroughs Building Material Co.* v. *Commissioner*, 47 Fed. (2d) 178, affirming 18 B. T. A. 101; *Helvering* v. *Superior Wines & Liquors, Inc.*, 134 Fed. (2d) 373.

The petitioner had the burden of proof. The amount paid by the taxpayer to the Commissioner in securing the release here is not revealed. That amount was deliberately omitted from the stipulation. The report refuses for present tax purposes "to place the petitioner in the same category with those" convicted of crime. But the assertion of criminal liability by the Commissioner *coupled with the admitted compromise of that liability* did that. *Helvering* v. *Superior Wines & Liquors, Inc., supra.* And, in my opinion, there is nothing in this record which establishes error in that action.

I do not think that any more of the expenses incident to obtaining the present release were deductible than such part, if any, as was properly allocable to obtaining the release from the asserted civil liability. *Helvering* v. *Superior Wines & Liquors, Inc., supra.*[2]

MELLOTT, *J.*, agrees with this dissent.

frustrate the sharply defined policies of 39 U. S. C. §§ 259 and 732 which authorized the Postmaster General to issue fraud orders. The single policy of these sections is to protect the public from fraudulent practices committed through the use of the mails. It is not their policy to impose personal punishment on violators; such punishment is provided by separate statute,[11] [Footnote 11, Criminal Code, sec. 215] and can be imposed only in a judicial proceeding in which the accused has the benefit of constitutional and statutory safeguards appropriate to trial for a crime. Nor is it their policy to deter persons accused of violating their terms from employing counsel to assist in presenting a bona fide defense to a proposed fraud order. It follows that to allow the deduction of respondent's litigation expenses would not frustrate the policy of these statutes; and to deny the deduction would attach a serious punitive consequence to the Postmaster General's finding which Congress has not expressly or impliedly indicated should result from such a finding. * * *"

[2] Neither the *Heininger* case nor the *Bingham* case, *supra,* upon which the majority rely, in my opinion reversed *Helvering* v. *Superior Wines & Liquors, Inc., supra.* Rather, I think, the *Heininger* case approved it. See footnote 1.