John Fabick Tractor Company v. Commissioner.
John Fabick Tractor Co. v. Commissioner
Docket No. 12519.
United States Tax Court
1948 Tax Ct. Memo LEXIS 271; 7 T.C.M. (CCH) 7; T.C.M. (RIA) 48002; January 14, 1948
E. Chas. Eichenbaum, Esq., and Leonard L. Scott, Esq., for the petitioner. Richard A. Jennings, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in excess profits taxes of $18,787.88 and $8,933.65 for 1942 and 1943, respectively. The issues are whether he erred (1) in disallowing deductions taken in both years for additions to a reserve for bad debts and (2) in adding to 1942 income an excess of capital stock tax accrued in 1941. Findings of Fact The petitioner is a Missouri corporation organized in 1927 with its principal office at St. Louis, Missouri. *272 Its books are kept on an accrual basis and its returns were filed on that basis with the collector of internal revenue for the first district of Missouri. The petitioner is engaged in selling, renting, and servicing earth-moving equipment and parts therefor. It is one of the largest distributors of the Caterpillar Tractor Company. Most of its customers are contractors. Practically all of its sales are on credit. The large items of equipment are usually sold on installment notes secured by chattel mortgages. The parts and services are sold on thirty day open accounts. Some sales are made to municipalities on warrants. The petitioner was granted permission by the Commissioner to use the reserve method of treating bad debts beginning with the calendar year 1940. It computed its additions to the reserve on the basis of 1 per cent of credit sales for the years 1940, 1941, and the first half of 1942; one-half of 1 per cent for the last half of 1942 and 1943; one-fourth of 1 per cent for 1944; and one-eighth of 1 per cent for 1945. An exhibit put in evidence by the petitioner, without objection from the respondent, shows the following respecting the petitioner's bad debt experience *273 and reserve accounts for the years 1928 to 1945, inclusive: Accounts
Bad Debts
Bad Debts
Net B/D
Year
Receivable
Credit Sales
Chrgd. Off
Recov'r'd
Chrgd. Off
% *
% **
1928
$ 622,373.08
$ 2,260.02
$ 2,260.02
.36
.36
1929
606,553.29
7,389.72
7,389.71
1.22
.79
1930
581,391.45
11,349.65
11,349.65
1.95
1.16
1931
453,896.52
9,360.68
9,360.68
2.06
1.34
1932
383,460.33
14,263.84
$ 1,976.86
12,286.98
3.20
1.61
1933
388,705.64
4,785.68
264.27
4,521.41
1.16
1.55
1934
703,552.30
31,991.54
31,991.54
4.55
2.12
1935
712,943.10
20,406.68
2,264.43
18,142.25
2.54
2.19
1936
$214,552.80
971,554.03
26,518.51
3,295.14
23,223.37
2.39
2.22
1937
308,430.58
1,095,924.04
19,704.04
19,704.04
1.80
2.15
1938
530,007.84
1,242,507.06
2,461.79
2,461.79
.20
1.84
1939
629,352.98
1,628,987.38
4,153.45
2,446.24
1,707.21
.10
1.54
1940
674,081.88
1,687,398.55
16,788.26
854.72
15,933.54
.94
1.45
1941
589,820.55
2,676,378.79
694.60
4,220.93
(3,526.33)
(.13)
1.14
1942
367,494.04
2,252,798.07
88.32
10,178.58
(10,090.26)
(.45)
.92
1943
378,626.98
1,973,796.23
1,638.03
1,685.66
(47.66)
0
.82
1944
411,488.27
2,693,629.64
3,772.78
469.55
3,303.23
.12
.73
1945
719,229.83
3,145,234.04
36,047.62
181.68
35,865.94
1.14
.78
*274 Recoveries
Reserve
B/D Chrgd.
Cr
Reserve
Year
Provided
Reserve
to Res.
Balance
1928
1929
1930
1931
1932
1933
1934
1935
1936
1937
1938
1939
1940
$16,873.98
$16,788.26
$ 854.72
$ 940.44
1941
26,747.80
694.60
2,801.49
29,795.13
1942
18,027.40
88.32
1,076.79
48,811.00
1943
9,868.98
1,638.03
1,685.66
58,727.61
1944
6,734.13
3,772.78
469.55
62,158.51
1945
3,936.33
36,047.62
181.68
30,228.90
The following table shows the amount of each class of the petitioner's "delinquent *275 receivables," i.e., due and unpaid as of the end of the years 1941, 1942, and 1943, and the percentage such amount was of the total of that class: Delinquent 12-31-41
Delingquent 12-31-42
Delinquent12-31-43
Amount
Per Cent
Amount
Per Cent
Amount
Per Cent
Accounts
$ 83,118.00
42
$105,888.00
62
$ 80,139.00
42
Notes
62,265.00
27
57,111.00
48
16,704.00
14
Leases
7,579.00
6
31,731.00
48
17,076.00
24
Warrants
5,507.00
10
3,663.00
26
3,661.00
88
Total
$158,469.00
27
$198,393.00
54
$117,580.00
31
The following table shows the percentages of the accounts set forth on the first line of the preceding table falling within the indicated age groups: 30 to
60 to
3 to 6
Over Six
Date
60 Days
90 Days
Months
Months
12-31-41
15.59
7.24
12.56
6.72
12-31-42
24.84
22.24
12.45
2.75
12-31-43
23.90
4.25
9.29
4.68
The accounts of six of the petitioner's principal customers during each of the years 1941, 1942, and 1943, are shown in the following table: Accounts
Notes
Leases
Total
Past Due
12-31-41
Joe Kesl
$12,669.00
$46,362.00
$ 59,031.00
I. C. Little
11,847.00
17,038.00
28,885.00
Fred Weber
18,100.00
18,100.00
Frazer-Brace
10,315.00
10,315.00
O'Dell &
Riney
30,302.00
35,819.00
$ 2,790.00
68,911.00
Krummel & Johnson
3,536.00
23,444.00
26,980.00
Total of six customers
$212,222.00
Not given
Total of all customers
$589,820.00
Percent six customers
of all customers
36%
12-31-42
Joe Kesl
$ 5,355.00
$19,800.00
$ 25,155.00
$ 6,600.00
I. C. Little
289.00
23,564.00
23,853.00
23,853.00
Fred Weber
2,901.00
12,997.00
$13,987.00
29,885.00
29,885.00
Sam Kraus
7,612.00
19,157.00
26,769.00
14,049.00
Frazer-Brace
31,512.00
31,512.00
Green River
13,507.00
13,507.00
Total of six customers
$61,176.00
$56,361.00
$33,144.00
$150,681.00
$ 74,118.00
Total of all customers
$367,494.00
$198,393.00
Percent six customers
of all customers
41%
12-31-43
Joe Kesl
$ 6,899.00
$ 6,899.00
Fred Weber
2,527.00
$ 4,684.00
7,211.00
$ 3,097.00
Sam Kraus
5,649.00
$54,205.00
59,854.00
48,477.00
Columbia Quarries
7,549.00
7,549.00
Grantwood
5,936.00
5,936.00
Potashnik
4,071.00
14,664.00
18,735.00
8,660.00
Total of six customers
$32,631.00
$19,348.00
$54,205.00
$106,184.00
$ 60,234.00
Total of all customers
$378,627.00
$117,580.00
Percent six customers
of all customers
28%
*276 All of the accounts shown in the preceding table were paid not later than the next year. However, in 1942 the I. C. Little and Fred Weber accounts were considered doubtful by the petitioner's officers. The amount owed by Sam Kraus in 1943 was in excess of his net worth. The petitioner extended credit to Potashnik because he had voluntarily paid $10,000 on an outlawed claim; it was unable to obtain reliable credit information about him. The petitioner's bad debt reserves for each year were discussed in conferences between its officers, an independent accountant and officers of the bank with which it had a line of credit. They had frequent contacts with each other. They considered monthly and annual statements of the accounts, the percentage of accounts concentrated in a few debtors, the financial responsibility of the debtors, the nature of the contracting business and in particular the hazard of adverse weather to that business. The month of December 1942 was unfavorable for earth-moving operations. Most of the petitioner's customers were subcontractors who were engaged in performing war contracts. Most of their earthmoving operations under such contracts were practically completed *277 in 1943. At the beginning of 1942 the petitioner owed its bank over a million dollars which was reduced to $94,000 at the end of that year. It owed nothing to its bank at the end of 1943. The Commissioner disallowed deductions taken in 1942 and 1943 by the petitioner for the additions to its reserve for bad debts shown hereinbefore. In the deficiency notice it was held that the petitioner's reserve for bad debts accumulated in prior years, plus recoveries, was sufficient to provide for all probable losses on receivables outstanding at the end of each taxable year, and that no additional provision from income for each year was reasonably required. The facts relating to the capital stock issue have been stipulated. The stipulation is incorporated herein by reference and it will be summarized in our opinion. Opinion LEMIRE, Judge: We consider first the disallowance of deductions taken in 1942 and 1943 for additions to the petitioner's reserve for bad debts. The Commissioner is given discretion in such cases under section 23 (k) (1) of the Internal Revenue Code. Hence, the question is whether his action in disallowing the additions was unreasonable in the *278 light of all the facts. At the beginning of 1942 the petitioner had a bad debt reserve of $29,795.13. The charges against that reserve were $88.32 in 1942 and $1,638.03 in 1943. However, those charges were exceeded by credits for recoveries in those years. As a result, the petitioner had a bad debt reserve of more than $30,000 at the end of each year. The Commissioner held that no addition to the reserve for either year was reasonably required. The petitioner claimed additions of $18,027.40 and $9,868.98, respectively. The petitioner computed the additions in question by using a percentage of its credit sales. The original rate of one per cent was less than the ratio of its net charge-offs to credit sales in the past. However, that rate had to be further reduced during the taxable years because it was obviously out of step with the petitioner's current experience. Net credits, rather than net charges, to the reserve caused an accumulation during the taxable years. In C. P. Ford & Co., Inc., 28 B.T.A. 156, we refused to adopt a percentage of sales as an addition to a reserve where the resulting addition would have increased the reserve beyond the necessity disclosed *279 by the taxpayer's experience or by its prospects for the future. The respondent points out that the petitioner's receivables at the end of 1941 were greater than those outstanding at the end of 1942. They were also greater than those outstanding at the end of 1943. The ratio of the reserve accumulated in 1941 to the receivables in each year was approximately five per cent in 1941 and approximately eight per cent in both 1942 and 1943. The petitioner's experience during the six years preceding the taxable years shows that the ratio of its bad debts to receivables was less than two and one-half per cent without adjustment for recoveries. The application of that percentage to the receivables for the taxable years would indicate a bad debt expectancy for each year of less than half of the reserve accumulated in 1941. We find nothing in the evidence, even in the opinions of the witnesses, to show that the petitioner could reasonably expect probable losses which would justify any addition to the reserve accumulated in 1941. We have considered the delinquencies, the specific accounts and the special circumstances described in the findings of fact. We have no means of measuring the actual *280 risk involved in those accounts which caused concern to the petitioner's officers. We do know that those accounts were collected in full. In our opinion, based on all the evidence, no addition to the petitioner's reserve for bad debts was reasonably required either in 1942 or 1943. Accordingly, we sustain the Commissioner's determination on the first issue for both taxable years. The facts relating to the capital stock tax issue have been stipulated. The petitioner used the accrual method of accounting but it did not accrue its capital stock tax liability in advance of payment. For many years it deducted such taxes in its income tax returns for the years during which capital stock taxes were actually paid. The examining revenue agents would then adjust the deductions to an accrual basis. On July 31, 1941, the petitioner paid a capital stock tax of $4,375 for the capital stock tax year ended June 30, 1941, and it deducted that amount in its income tax return for 1941. An examining revenue agent allowed that amount as a deduction for 1940. He further allowed $4,510 as a deduction for 1941. Subsequently, deficiencies in the petitioner's excess profits tax liability for 1940 and 1941 *281 were determined by the Commissioner and settled by stipulation. In the computation of the agreed deficiency for 1941 the sum of $4,510 was allowed as a deduction for capital stock tax (year ended June 30, 1942). The deductibility of that amount was not contested by the petitioner. On October 21, 1942, section 1202 of the Internal Revenue Code was amended by section 301 of the Revenue Act of 1942 to permit an annual declaration of value for capital stock tax purposes. The petitioner thereupon declared a new value in its capital stock tax return which was lower than the amount used in computing the accrual for 1941. The new value resulted in a capital stock tax of $3,500 (year ended June 30, 1942) which was paid on November 28, 1942. The Commissioner determined that $1,010 ($4,510 accrued less $3,500 paid) was released as additional income in 1942. The petitioner's capital stock tax (year ended June 30, 1942) was accruable on July 1, 1941, in the sum of $4,510. No event occurred during 1941 to change that liability. It was changed in 1942 by the declaration of a new value in the capital stock tax return. The new value was not authorized and could not have *282 been used as the basis for determining the amount of the accrual in 1941. In United States v. Detroit Moulding Corp., 56 Fed. Supp. 754, which is directly in point, it was said: Where, as here, in accrual accounting by calendar year periods for income tax purposes, all the events occur within a calendar year which fix the amount and the fact of a taxpayer's liability for an excise tax accrued though not paid, which liability is neither contested by the taxpayer nor contingent and not changed within a reasonable time after the close of the calendar year, proper accounting practice requires that such liability be accounted and deducted as accrued during such year, and, if such liability is lessened by unexpected events occurring in a subsequent year, after the income tax return has been filed, proper accounting practice requires that this be reflected by an entry in the subsequent year, crediting as income the amount by which the obligation has been so lessened, rather than by reopening and adjusting the taxpayer's books for the previous year." The petitioner argues that the respondent is estopped because he had knowledge that the petitioner had actually paid a lesser *283 amount of capital stock tax. However, the amount of the accrual was correctly determined and the petitioner agreed to the change. The petitioner also relies upon Greene Motor Co., 5 T.C. 314. In that case, however, deductions were erroneously allowed by the Commissioner. We held that the amounts thereof were not includible in income of a subsequent year. We think that case is distinguishable. It did not involve any element of refund or reduction in liability during the subsequent year. The petitioner was entitled to accrue the sum of $4,510 in 1941 under the principles set forth in Baltimore Transfer Co., 8 T.C. 1. We hold that the payment of a lesser amount in 1942 released the balance of the accrual as income in the year of payment. United States v. Detroit Moulding Corp., supra.See also J. I. Case Co. v. United States, 32 Fed. Supp. 754, and Elsie S. Eckstein, 41 B.T.A. 746. Decision will be entered for the respondent. Footnotes
*. Percentage of net charge-offs to credit sales during current year. ↩
**. Percentage of net charge-offs to sales, totals of both to date. NOTE: The column headed "Accounts Receivable" apparently includes not only "accounts" receivable, but other receivables on notes, leases and warrants. Only part of the recoveries shown in the column headed "Bad Debts Recov'r'd" for 1941 and 1942 were credited to the reserve account. Part of the recoveries in those years represented bad debts charged off when the petitioner was on the actual bad debt charge-off method. Apparently the amounts not credited to the reserve account were treated as income.↩