**J. GORDON TURNBULL, INC.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 22173.

United States Court of Appeals
Fifth Circuit.

Feb. 1, 1967.

Rehearing Denied March 22, 1967.

Robert Edwin Davis, Wentworth T. Durant, Ronald M. Mankoff, Durant, Mankoff & Davis, Dallas, Tex., for petitioner.

Lester R. Uretz, Chief Counsel, I.R.S., Glen E. Hardy, Atty., I.R.S., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Meyer Rothwacks, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Richard M. Roberts, Acting Asst. Atty. Gen., for respondent.

Before RIVES, WISDOM and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Taxpayer petitions for review of an adverse decision of the Tax Court. The issue is whether taxpayer was availed of for the purpose of permitting earnings or profits to accumulate beyond the reasonable needs of its business (as provided by Section 102 of the Internal Revenue Code of 1939), thereby avoiding the imposition of the surtax on its shareholders. The taxable years involved are those for the years ended November 30, 1952, November 30, 1953 and the period December 1, 1953 through February 4 1954.

J. Gordon Turnbull, Inc., taxpayer, (JGT), was organized under the laws of Ohio in August 1941, with its principal place of business at Cleveland. It was authorized to do business in several states and furnished engineers, architectural and construction management services in connection with the building of military installations, manufacturing plants and other large structures. J. Gordon Turnbull was the controlling stockholder, president and chief executive officer until his death on April 1, 1953. JGT kept its books and records on a cash method of accounting.

In 1944, Ohio amended its corporation law to prohibit corporations from engaging in the rendering of architectural and engineering services but permitted corporations heretofore chartered for that purpose to continue in existence.

Pertinent to the issue of unreasonable accumulation of earnings and profits is an accident which occurred on November 15, 1951, on a construction job at Gregory, Texas, involving a silo in which one worker was killed and seven others injured. JGT was the architectural engineer on the job and eight damage suits in tort totaling $532,895 were filed against it as well as the joint venture general contractors, H. R. Henderson and Company and Henry C. Beck Company, and Reynolds Metals Company, the landowner. All of the injured persons were employed by a subcontractor which was building the silo when the accident occurred and which had drawn the plans for the actual construction as well as controlled the method of construction. JGT was responsible for drawing the plans for the finished product and design of the entire plant but did not draw the plans for the silo nor did it control the subcontractors' method of installation. At the time, JGT carried general liability insurance policies with Bankers Indemnity Insurance Company and Employers Casualty Company, each for $50,000. Bankers disclaimed liability under its policy but Employers undertook the defense of the case for JGT. The tort suits were finally disposed of by settlement on November 1, 1954, by which Employers Casualty paid $5,000 on behalf of taxpayer and obtained releases in all cases. Travelers Insurance Company paid $40,000 as insurer for Henderson-Beck, and Stewart paid $4,350, a total of $49,350.

When Mr. Turnbull died, his counsel, W. A. Falsgraf, took charge of the company and instructed that all bids and quotations be recalled and no further contracts signed, as a part of a plan of liquidation agreed to with Mr. Turnbull immediately before his death. Uncompleted contracts were assigned to E. G. Novak, one of JGT's office managers. Thereafter, some employees of taxpayer sought to acquire the stock and keep the corporation's charter alive, but Falsgraf would not agree without a ruling from

the Internal Revenue Service as to the tax consequences to shareholders. Falsgraf also negotiated with other interested parties with a view to a sale of the stock to a liquidation of the company.

On February 4, 1954, H. R. Henderson and Company acquired all of JGT's stock for $975,000, and JGT loaned Henderson $801,108.37 of its cash funds to purchase the stock.

During the six fiscal years ended November 30, 1948 through November 30, 1953, JGT had substantial current income which, after deduction for current taxes and the payment of nominal dividends, left a large earned surplus balance at the end of the year. The surplus grew from $158,726.82 at fiscal 1947 to $668,412.30 at fiscal 1953.[1]

The Tax Court found that the accumulation of earnings and profits was unreasonable and ordered entry of its decision against taxpayer under Rule 50 of the Rules of the Tax Court. We agree, being of the opinion that the corporation's accumulations were unreasonable and designed to avoid surtax to its

[1] The actual detail of earnings and profits less current taxes, current earnings available for dividends, dividends paid and earned surplus are shown in the following table:

Table 1

| Fiscal Year Ended | Current Net Income | Deduct: Current Taxes | Current Net Income After Taxes | Other Adjustments to Earned Surplus | Current Earnings Available for Dividends | Dividends Paid | Earned Surplus Balance End of Year |
|---|---|---|---|---|---|---|---|
| 11-30-47 | | | | | | | $158,726.82 |
| 11-30-48 | $ 206,822.25 | $(107,185.65) | $ 99,636.60 | $4,961.98 | $104,598.58 | $ (40,775.00) | 222,550.40 |
| 11-30-49 | 153,646.19 | ( 58,385.55) | 95,260.64 | | 95,260.64 | (16,240.00) | 301,571.04 |
| 11-30-50 | 300,066.40 | (139,496.86) | 160,569.54 | | 160,569.54 | (16,240.00) | 445,900.58 |
| 11-30-51 | 217,629.88 | (117,385.85) | 100,244.03 | | 100,244.03 | —0— | 546,144.61 |
| 11-30-52 | 31,737.67 | ( 10,580.67) | 21,157.00 | | 21,157.00 | (16,240.00) | 551,061.61 |
| 11-30-53 | 200,090.80 | ( 82,740.11) | 117,350.69 | | 117,350.69 | —0— | 668,412.30 |
| | $1,109,993.19 | $(515,774.69) | $594,218.50 | $4,961.98 | $599,180.48 | $(89,495.00) | |

shareholders.[2] The principal issue involves factual determinations and the Tax Court's findings are amply supported by the record and should be affirmed. See Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346 (1938). It is, therefore, unnecessary to decide the question of whether the Government or the taxpayer has the burden of proof.[3]

■ Taxpayer contends that its dividend payouts were reasonable and that the accumulation of earnings and profits in the involved years was proper to fulfill reasonable working capital needs and reserve for contingent liability on the eight tort suits. It also asserts that it was in the orderly process of liquidation and not subject to the Section 102 penalty.

Reference to Table 1 in footnote 1 shows total dividend payout by taxpayer in the six fiscal years, 1948–1953, of $89,495 out of a total of current earnings available for dividends of $599,180 —hardly a substantial payment of dividends unless other factors required accumulation. Working capital needs were more than adequately taken care of when reference is made to the balance sheets of JGT. The ratio of current assets to current liabilities in 1952 was 11.12 to 1 and cash to current liabilities 5.73 to 1; and in 1953, the ratio of current assets to current liabilities was 6.97 to 1 and cash to current liabilities 6.18 to 1. It is obvious there was an ample reserve far above the cash needs of the company and that the Tax Court's holding was proper in this regard.

■ JGT, however, urges that the filing of the tort suits against it and other defendants in the amount of $532,-895 required that in reasonable management of the business there should be a sufficiently large accumulation of earn-

ings and profits to take care of this contingent liability. The evidence shows that taxpayer was not considered to be one of the principal defendants; that it had ample public liability insurance to cover; and that only $5,000 was paid in its behalf to settle its liability in all of the cases. We hold, therefore, that the Tax Court's findings with respect to reasonable needs for the contingent liability in these cases were correct.

■ Though it is true that Mr. Falsgraf curtailed the activities of taxpayer after Mr. Turnbull's death, this circumstance did not enter the case until April 1, 1953, when Mr. Turnbull died. We are considering here all of the period in fiscal 1952 and 1953 and the short year ended February 4, 1954. The corporation was not placed in liquidation and its corporate charter, because of the change of the Ohio law forbidding architects and engineers to be incorporated but reserving that right to those already chartered, was a valuable asset to a prospective purchaser. Since the corporation was never liquidated and no distribution ever made in liquidation, in fact, the corporation's stock was sold to Henderson, the taxpayer may not properly contend that an orderly liquidation defeated the Section 102 tax. The Tax Court's ruling, therefore, is correct.

■ Taxpayer also urges that the Rule 50 computation is erroneous because it fails to permit deduction of current federal income taxes from current net income in computing the surtax penalty. However, the computation was made in accordance with Section 102(d) (1) (A), which permits a deduction for income taxes "paid or accrued" in the current year. The computation allows a deduction for the amount of 1952 taxes actually paid in 1953 but denies a deduction for the amount of taxes incurred but not

---

2. Shareholders, Mr. and Mrs. Turnbull, were in a tax bracket of approximately 67 per cent and 66 per cent for the years 1952 and 1953.

3. Section 534 of the 1954 Code provides that the burden of proof shall be on the Commissioner if the taxpayer complies

with the conditions of the Section by filing a statement of the grounds and facts sufficient to show the basis for the accumulation. Taxpayer filed a statement but the Commissioner has contested its sufficiency, so that each side contends the other has the burden of proof.

paid in 1953. Taxpayer's books are kept on a cash rather than accrual basis. The case is squarely within the ruling of the Second Circuit in Harry M. Stevens, Inc. v. Johnson, 2 Cir., 1956, 238 F.2d 436, cert den., 353 U.S. 909, 77 S.Ct. 664, 1 L.Ed.2d 663 (1957), where the identical question was presented and taxpayer's contention rejected.[4] The Tax Court holding is, therefore, correct.

Affirmed.

4. The Government points out in its brief that such an issue would not arise under the 1954 Code because the deduction in computing Section 102 net income for taxes accrued in the taxable year is permitted whether the taxpayer is on a cash or accrual method. See Section 535(b)(1) of the Internal Revenue Code of 1954; Mertens, Law of Federal Income Taxation, (Rev.) Code Commentary, Section 535.2.