**RHOMBAR CO., Inc., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 42, Docket 31254.

United States Court of Appeals
Second Circuit.

Argued Oct. 26, 1967.

Decided Nov. 16, 1967.

Jay O. Kramer, New York City (Frederick Gelberg, Saul Duff Kronovet, Solomon L. Warhaftig, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for petitioner.

Stephen H. Paley, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Attys., Dept. of Justice), for respondent.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This petition to review a decision of the Tax Court, Atkins, J., reported at 47 T.C. 75 (1967), holding Rhombar Co., Inc. liable for the accumulated earnings tax imposed by Section 531 of the Internal Revenue Code of 1954 for the taxable years ending January 31, 1960, 1961, and 1962,[1] presents what may be the first instance in which a taxpayer's counsel has had the "abnormally strong nervous system"[2] necessary to risk his entire accumulated earnings tax case on the burden of proof issue under § 534. The Tax Court held that Rhombar had the burden of proving it was not a "mere holding or investment company" within the meaning of § 533(b), and that it had failed to introduce any evidence to support its position; accordingly, it held against taxpayer. We affirm the decision of the Tax Court.

The facts are fully set out in the Tax Court's opinion, and we need recite them here only briefly. Rhombar Co. is a closely held corporation owned almost entirely by the family of Herbert M. Rothschild. Before 1952 it engaged in the furniture distribution business under the name of John Stuart Inc. In that year it sold all its business assets, including the right to use the John Stuart corporate name, to John Widdicomb Co., Inc. (New York) [Widdicomb], another closely held corporation in which the Rothschilds had, after the sale, a controlling interest.[3] Since that time Widdicomb has operated Rhombar's former business and has adopted Rhombar's old name, John Stuart Inc. Rhombar, on the other hand, has not re-entered the furniture business; instead it has steadily accumulated its income, which is derived entirely from dividends, interest, and capital gains from the sales of securities and from installment payments it receives from Widdicomb. As a result its surplus has more than doubled, rising to over $2,000,000, but only *de minimis* dividends of $700 annually were paid.[4]

I.

The accumulated earnings tax is imposed on corporations "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed." Code, § 532(a). In this connection, two statutory presumptions have long been spelled out in the Code. The first of these, found in

[1]. The Tax Court found deficiencies of $17,257.53, $17,618.46, and $18,325.78 for the 3 years here at issue. Other issues were presented to the Tax Court, but they are not before us on this appeal.

[2]. Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 234 (2d ed.).

[3]. Before the agreement of sale was entered into, the Rothschilds owned 50 per cent of the outstanding stock of Widdicomb. Afterwards, they possessed 66 per cent of the voting power.

[4]. For the fiscal years ending January 31, 1954 through 1963, Rhombar's net income before taxes ranged from a high of $468,549.53 in 1961–62, to a low of $49,-827.58 in 1962–63. Surplus increased from $1,167,648.74 to $2,382,494.55, and the fair market value of its investments was considerably higher.

§ 533(a), provides that "the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary." The second, contained in § 533(b)· states: "The fact that any corporation is a mere holding or investment company shall be prima facie evidence of the purpose to avoid the income tax with respect to shareholders." Accordingly, the forbidden purpose of avoiding income tax may be established by either of these statutory presumptions.

Ordinarily, the burden of proving that the Commissioner's determination is wrong rests on the taxpayer, because the Commissioner's deficiency assessment is considered presumptively correct.[5] But Congress recognized this rule might have "several undesirable consequences" [6] when the Commissioner sought to assess an accumulated earnings tax. As a result, in 1954 it enacted § 534.[7] This section sets forth the pro-

---

5. Tax Court Rule 32; Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935).

6. The Senate Finance Committee Report on the Internal Revenue Code of 1954, S.Rep. No. 1622, 83d Cong., 2d Sess. (1954), reprinted in 3 U.S.Code Cong. & Admin.News 4621, 4702 (1954), states:
 Your committee agrees with the House that this imposition of the burden of proof on the taxpayer has had several undesirable consequences. The poor record of the Government in the litigated cases in this area indicates that deficiencies have been asserted in many cases which were not adequately screened or analyzed. At the same time taxpayers were put to substantial expense and effort in proving that the accumulation was for the reasonable needs of the business. Moreover, the complaints of taxpayers that the tax is used as a threat by revenue agents to induce settlement on other issues appear to have a connection with the burden of proof which the taxpayer is required to assume. It also appears probable that many small taxpayers may have yielded to a proposed deficiency because of the expense and difficulty of litigating their case under the present rules.

7. Sec. 534. BURDEN OF PROOF.
 (a) *General Rule.*—In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall—
 (1) if notification has not been sent in accordance with subsection (b), be on the Secretary or his delegate, or
 (2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or his delegate with respect to the grounds set forth in such statement in accordance with the provisions of such subsection.
 (b) *Notification by Secretary.*—Before mailing the notice of deficiency referred to in subsection (a), the Secretary or his delegate may send by certified mail or registered mail a notification informing the taxpayer that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by section 531. * * *
 (c) *Statement by taxpayer.*—Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary or his delegate may prescribe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business.
 * * * * *
 If Congress hoped that these provisions would make a material difference in tax litigation it has been frustrated, for the Tax Court generally has not ruled in advance on the adequacy of taxpayers' statements. See, e. g., Shaw Walker Co., 39 T.C. 293 (1962). As a result, taxpayers are rarely certain that the burden of proof has been shifted to the Commissioner. Thus, rather than risking all on the burden of proof issue, they continue to introduce evidence just as they did before § 534 was enacted. See Mertens, Law of Federal Income Taxation, Code Commentary, § 534.1. For a criticism of the Tax Court's policy, see Holzman, Burden of Proof in Accumulated Earnings Tax Cases and Its Development in the Second Circuit Court of Appeals, 11 Buff.L.Rev. 328, 362–63 (1962).

cedures, followed by the Commissioner and the taxpayer in this case, for switching the burden of proof. The Commissioner notified Rhombar on July 23, 1964 that he proposed to issue a statutory notice of deficiency based on the accumulated earnings tax. In response, on September 3, 1964, Rhombar submitted to the Commissioner a 13-page statement setting forth in detail a recitation of its efforts since it sold its business to Widdicomb to acquire another furniture company. The statement claimed that "the reasonable needs of the business of Rhombar required it to set aside and maintain a reserve at least equal to its entire net worth and to build up such reserve out of its earnings and profits, as soon as feasible, to a minimum of at least $3,500,000 in order to finance an acquisition program (adopted in 1952 under circumstances more fully described below) or purchasing interests in businesses engaged in the manufacture of furniture and/or furniture manufacturing facilities. At no time during the years at issue had Rhombar accumulated sufficient amounts for this purpose." Accordingly, Rhombar claimed it had not accumulated its earnings beyond its reasonable business needs.

 It appears, therefore, that under § 534, the burden of proof under § 533(a) (accumulation beyond reasonable needs of business) was shifted to the Commissioner if Rhombar's statement contained "sufficient" facts.[8] Rhombar makes the novel claim—rejected by the Tax Court—that the statement submitted to the Commissioner under § 534 also shifted the burden of proof to the Commissioner with respect to § 533(b) (mere holding or investment company).

Reference to the language of § 534 should be sufficient to refute Rhombar's argument. It provides that when a notice of deficiency is based on the allegation that "the earnings and profits have been permitted to accumulate beyond the

reasonable needs of the business," the burden of proof "with respect to such allegation" shall be shifted if the taxpayer submits an appropriate statement showing the facts and grounds on which he relies to establish that earnings and profits "have not been permitted to accumulate beyond the reasonable needs of the business." Thus, § 534 echoes the exact language of § 533(a), but does not give the slightest indication that it is applicable to § 533(b). The maxim *expressio unius est exclusio alterius* is not without relevancy under these circumstances.

Moreover, this is not a situation in which a straight-forward reading of the Code does violence to the Congressional purpose. Sections 533(a) and 533(b) are alternative presumptions which can be used to prove the ultimate objective of tax avoidance. In fact, when first enacted in the Income Tax Act of 1913, they were explicitly treated in the disjunctive.[9] And, the Revenue Act of 1938 increased the strength of the presumption to be given an accumulation beyond the reasonable needs of the business, but left unchanged the force of the presumption that a holding or investment company was a tax avoidance device.[10] Thus, when § 534 was enacted in 1954, Congress was well aware of the distinction between § 533(a) and § 533 (b). That § 534 affects only § 533(a) is not surprising nor inconsistent, for the Committee Reports indicate that Congress was concerned in the main with the difficulty taxpayers faced in proving that their accumulations were not in excess of the reasonable needs of their businesses. The Reports are barren of any indication that Congress had any concern with the distinctly different problems taxpayers faced when proving that they engaged in activities beyond "holding property and collecting the income therefrom or investing therein,"[11] i. e., that

---

8. The Tax Court expressly did not decide whether the statement was sufficient to shift the burden of proof.

9. 38 Stat. 114, 166.

10. 52 Stat. 447, 483.

11. Treas.Regs. § 1.533–1(c).

they were not mere holding or investment companies.

Rhombar contends, however, that the credit provisions of § 535 support its argument that the burden of proving it was a mere holding or investment company rested on the Commissioner. Section 535, like § 534, was added to the Internal Revenue Code in 1954. It provides, *inter alia,* a credit for that portion of a corporation's earnings and profits which were accumulated for the reasonable needs of the business. The tax is thus imposed only on that portion of the accumulation which exceeds the reasonable needs of the business. Specifically, the statute provides, "in the case of a corporation *other than a mere holding or investment company* the accumulated earnings credit is (A) an amount equal to such part of the earnings and profits for the taxable year as are retained for the reasonable needs of the business * * * " Code, § 535(c) (1) (emphasis added). For most corporations this credit is potentially unlimited in amount, but in the case of mere holding or investment companies, credit is limited by § 535(c) (3) to a maximum of $100,000.

It is conceded that if a proper § 534 statement had been submitted, the Commissioner had the burden of proving the amount of the credit to which the taxpayer was entitled, i. e., the amount of the accumulation retained for reasonable business needs. Rhombar argues from this that if the credit is to be limited because a taxpayer is a mere holding or investment company, the burden of proving this must be on the Commissioner "since it is a necessary part of the [Commissioner's] admitted burden of proving the amount of the credit to which a taxpayer is entitled under § 535(c) (1)."

The difficulty with this contention is that a basic maxim of tax law interpretation is that rarely are there occasions when each provision of the Code can be interpreted as if existing in a vacuum. In any event, it is hardly likely that Congress intended that § 534 and § 535, enacted at the same time, would work at cross purposes. Indeed, to permit the credit section to overpower or submerge and dilute the burden of proof section would be to permit the tail to wag the dog.

The question of the reasonable needs of the business about which § 534 speaks is not relevant to § 533(b) for, as Congress was informed by a Secretary of the Treasury, "it is questionable whether any investment company could have a surplus beyond the reasonable needs of its business, since its sole business was to invest."[12] Thus, the most intelligible reading of the italicized words in § 535(c) (1) on which taxpayer relies is that they constitute a recognition of the truth of the Secretary's remark.

Accordingly, we believe the Tax Court was correct in holding that § 534 statements do not shift the burden of proof with respect to § 533(b).

## II.

Rhombar makes the interesting argument that, in any event, the Tax Court erred in not considering, for the purpose of determining whether it was a mere holding or investment company, the allegations in its § 534 statement. But the short answer to this is that Rhombar never sought to place the statement in evidence or to establish any of the facts contained therein by competent testimony. Tax Court Rule 31(f) states clearly, "Ex parte affidavits, statements in briefs, and unadmitted allegations in pleadings do not constitute evidence." Rhombar seeks to excuse its failure to comply with this rule by asserting that the Commissioner was in possession of the statement for 18 months before trial, but made no effort to controvert its allegations. This argument has superficial appeal only. If Rhombar was laboring under the impression that the Commissioner was conceding the truth of the facts alleged in the statement by not controverting them, then it would have been simple enough to at least tie this down by seeking a stipulation from

12. Secretary of the Treasury Mellon, 65 Cong.Record, Part 7, p. 7355 (1924).

the Commissioner consenting to the introduction of the statement in evidence, thus making it competent evidence. Then, if the Commissioner withheld his consent, Rhombar would have been required to call a witness to testify to the matters alleged in the statement. This procedure is not a mere exercise in technicalities, for, in that event, the Commissioner would not have been deprived of the opportunity to cross-examine as to the validity of the allegations of the statement.

■ Rhombar attempts to circumvent this weakness in its argument by claiming that Congress intended to modify the usual rules of evidence by making § 534 statements substitutes for testimony at trial. But, the statute and the legislative history are totally devoid of even a suggestion that Congress intended to change so settled a rule of evidence. We have not been cited to nor have we found any indication either that § 534 statements do more than shift the burden of proof, or that a statement, without testimonial authentication or stipulation consenting to its admission in evidence, can be used as a substitute for competent evidence. To accept taxpayer's position would mean that we agree that rules of evidence, whether contained in a Tax Court rule (Rule 31(f)) or applicable to ordinary trials in a district court could be easily circumvented in instances where the opposing side had knowledge of a party's claim before trial (which is not rare in this day of extensive pre-trial discovery) but did not assume the burden of disproving the claims even before the claims were established by competent evidence.

### III.

■ Finally, at argument of this appeal, Rhombar maintained that it was "taken by surprise" by the Commissioner's reliance on § 533(b) in the Tax Court. It is not without significance that no such claim was made or even hinted at in the taxpayer's motion in the Tax Court to vacate the opinion or in its supporting memorandum.[13] Certainly, if taxpayer felt aggrieved over the Commissioner's position and the Tax Court's reliance on § 533(b), it is reasonable to expect such a claim to have been asserted at that time. Thus, we find it difficult to conclude that the claim of surprise is anything but a resourceful afterthought. In any event, we believe that the Commissioner gave taxpayer reasonable notice that he was relying on § 533(b). The Commissioner's 10-page answer in the Tax Court was sufficient to put Rhombar on notice that the Commissioner was relying on § 533(b). For example, it stated that after the sale of its business assets to Widdicomb, "Petitioner continued in existence as an investment company," and pointedly stated, "Petitioner is a holding or investment company." Moreover, it is of some interest that the taxpayer, in its reply, explicitly referred to and denied both these allegations, thus showing an awareness of the Commissioner's claim. And, it strains one's credulity to accept taxpayer's suggestion that the failure of the Commissioner to charge it with being a "mere" holding company instead of just a holding company was misleading in some fashion. Our examination of the Tax Court record furthermore convinces us that Rhombar knew that the thrust of § 533(b) was in issue. Counsel for the Commissioner began his brief opening statement by referring to "the holding company, the investment company which resulted out of John Stuart, Inc., which is before us here as Rhombar Co., Inc. * * *" And the basic arguments in the Tax Court were over Rhombar's claim that it was a holding company, but not a "mere" holding company, and over its interpretation of § 535.

It appears to us that Rhombar deliberately chose to rest its hopes in the Tax Court on its § 535 argument—that Congress intended § 534 statements to shift to the Commissioner the burden of proving that taxpayer was a mere hold-

---

**13.** These concerned themselves only with taxpayer's interpretation of § 535.

ing or investment company—which the Tax Court rejected, and which we have rejected in part I of this opinion. Competent tax counsel, having followed this strategy in the Tax Court, is not entitled to have the slate wiped clean and to start all over in this Court.

The decision of the Tax Court is affirmed.