ALEX BROWN, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1162–72.    Filed June 11, 1973.

*Bennet Kleinman*, for the petitioner.
*Buckley D. Sowards*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $74,552 against petitioner, representing accumulated-earnings tax for the fiscal year ended May 31, 1969. The sole question before us is whether petitioner was availed of for the purpose of avoiding Federal income taxes with respect to its shareholders within the meaning of sections 531 through 537.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

[10] See sec. 1563(b)(1)(A).

[1] All Code references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.

Petitioner's principal office was in Cleveland, Ohio, at the time it filed its petition herein. It filed its Federal income tax return for the period involved with the district director of internal revenue in Cleveland, Ohio.

Petitioner was organized in 1962 to engage in the manufacture and sale of clothing and wearing apparel.

Following the incorporation, the taxpayer authorized and issued 50 shares of common stock to Alexander Brown (hereinafter Brown) (40 shares) and his wife, Anne Brown (10 shares). The capital structure and ownership of the shares has not changed.

Brown came to the United States from Hungary in 1949 when he was 23 years of age. He did not complete high school and received no formal education in the United States.

Petitioner was in the doubleknit goods business. In November 1968, Brown was approached by Lampl Fashions, Inc. (hereinafter Lampl), a corporation in which neither petitioner nor Brown had any interest. Lampl indicated a desire to buy the business.

On December 27, 1968, petitioner sold its physical assets, goodwill, finished goods, work in process, supplies, and inventories to Lampl. Brown was required under the terms of the sale to work for Lampl for 2 years.

Between December 31, 1968, and May 31, 1969, Brown had two general conversations—one with his lawyer and one with a man who wanted to go into business. Petitioner's minutes contain no mention of any plans to enter into a new business or any enterprise before or after the sale of the assets to Lampl.

Petitioner's balance sheet as shown on Schedule L of its Federal income tax return for the fiscal year ended May 31, 1969 reveals the following:

| Assets | Beginning of taxable year | End of taxable year |
|---|---|---|
| Cash | $714, 084 | $41, 436 |
| Accounts receivable | 142, 689 | 190, 726 |
| Inventories | 246, 712 | 0 |
| Investments in government obligations, etc | 0 | 1, 102, 680 |
| Buildings and other depreciable assets less depreciation | 70, 322 | 283 |
| Other assets | 19, 179 | 10, 994 |
| Total | $1, 192, 986 | $1, 346, 119 |

| Liabilities and stockholders' equity | | |
|---|---|---|
| Accounts payable | $196, 252 | $11, 366 |
| Other current liabilities | 253, 579 | 283, 900 |
| Common stock | 5, 000 | 5, 000 |
| Retained earnings | 738, 155 | 1, 045, 853 |
| Total | 1, 192, 986 | 1, 346, 119 |

Petitioner reported $586,518 of taxable income for the fiscal year ending May 31, 1969. Petitioner filed a personal holding company return for the fiscal year ended May 31, 1970. As of the time of trial, petitioner had not engaged in any other type of business activity.

Petitioner's current earnings and dividends paid for the years indicated were as follows:

| TYE May 31— | Earnings | Dividends paid |
|---|---|---|
| 1964 | $21, 776 | $50 |
| 1965 | 47, 396 | 50 |
| 1966 | 175, 958 | 100 |
| 1967 | 187, 241 | 100 |
| 1968 | 267, 675 | 5, 000 |
| 1969 | 308, 600 | 0 |

If petitioner had distributed its earnings for the year ended May 31, 1969, the additional tax to its shareholders, for their taxable year ended December 31, 1969, would have been at least $151,000.

Petitioner became a mere holding or investment company as of December 31, 1968, and remained such throughout its fiscal year ended May 31, 1969.

On September 9, 1971, in accordance with the provisions of section 534(b), respondent sent petitioner a notice of the proposed deficiency in respect of the accumulated-earnings tax for the fiscal year ended May 31, 1969. Petitioner did not submit a statement pursuant to section 534(c).

### OPINION

Whether petitioner was availed of for the purpose of avoiding Federal income taxes with respect to its shareholders within the meaning of section 532(a) depends upon the resolution of two questions. First, did petitioner permit its earnings and profits to accumulate beyond the reasonable needs of its business within the meaning of sections 532(a) and 537? Second, did it have the purpose proscribed by section 532(a)? These are two separate questions, although they are seemingly often treated as one by the courts. Thus, an answer to the first question, which is unfavorable to petitioner, is not determinative of the second question. See *United States* v. *Donruss Co.*, 393 U.S. 297, 305 (1969); *Bremerton Sun Publishing Co.*, 44 T.C. 566, 588 (1965); cf. *Rhombar Co.* v. *Commissioner*, 386 F. 2d 510 (C.A. 2, 1967).

We turn to the first question. Since respondent sent the notice of proposed deficiency required by section 534(b) and petitioner did not file any statement pursuant to section 534(c), the burden of proof that its earnings were accumulated to meet the reasonable needs of its business remained upon petitioner. Rule 32, Tax Court Rules of Practice. The mere fact of cessation of petitioner's business does not, in and of itself, provide a basis for avoiding the accumulated-earnings

tax. Cf. *Dixie, Inc.* v. *Commissioner*, 277 F. 2d 526 (C.A. 2, 1960), affirming 31 T.C. 415 (1958); *Egan, Inc.*, v. *Commissioner*, 236 F. 2d 343 (C.A. 8, 1956), affirming a Memorandum Opinion of this Court; *J. Gordon Turnbull, Inc.*, 41 T.C. 358, 374 (1963), affd. 373 F. 2d 87 (C.A. 5, 1967).

Aside from Brown's vague testimony about two conversations, one with his lawyer and one with another person, the record herein is devoid of any evidence of specific thoughts, much less plans, as to how petitioner might put its funds to work. Petitioner must therefore be held not to have sustained its burden of proof as to the reasonable needs of its business. We realize that petitioner was suddenly confronted with the problem of finding another business and it may well be that, under certain circumstances, some breathing spell should be allowed. But, even then, the question is how long is a reasonable spell, not necessarily for the implementation but at least for the development of some plans. Here 5 months elapsed without *any* such development and we think that, at least under the circumstances herein, this period is too long.

In point of fact, it might be more appropriate to consider the allowance of a breathing spell in the context of determining whether the proscribed purpose existed rather than in determining whether the accumulations were justified by the reasonable needs of the business. Indeed, this is the focus of petitioner's argument on brief. Accordingly, we turn to a consideration of the second question, namely, whether that purpose existed.

In order to sustain its contentions, petitioner carries a heavier than usual burden of proof. Section 533(a) provides that permitting earnings and profits "to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary." And section 533(b) provides that "The fact that any corporation is a mere holding or investment company shall be prima facie evidence of the purpose to avoid the income tax with respect to its shareholders." We have found as a fact (and petitioner has not argued otherwise) that petitioner became "a mere holding or investment company as of December 31, 1968 and remained such throughout its fiscal year ending May 31, 1969," so this latter provision applies. See *Golconda Mining Corp.*, 58 T.C. 139, 159 (1972), and 58 T.C. 736 (1972), on appeal (C.A. 9, Nov. 15, 1972 (petitioner), and Dec. 22, 1972 (respondent)).

Petitioner argues that its burden of proof has been satisfied because of the lack of education of Brown, the suddenness of the sale of the business, the fact that Brown was required to work for the purchaser, and the alleged short span of time involved. On the other hand, we have the facts that there was no apparent effort to develop any plans

during the 5-month period prior to the end of the fiscal year in which the sale occurred; that petitioner declared no dividend for the fiscal year in question (although it had declared a $5,000 dividend in the prior fiscal year); that, if petitioner's current income had been distributed as a dividend, the additional tax on Brown would have been substantial and approximately twice the accumulated-earnings tax; and that petitioner was a personal holding company in the following fiscal year and had not, up to the time of trial herein, engaged in any other type of business activity.[2]

This is not a case where we might be substituting our business judgment for that of corporate management, something we are reluctant to do. See *Faber Cement Block Co.*, 50 T.C. 317, 329 (1968). Here there was no judgment by management, even of an embryonic nature. Brown, acting on behalf of petitioner, was not required to be an instant Horatio Alger, but neither was he entitled to be a financial Rip Van Winkle. Under all the circumstances, we think it clear that petitioner has failed to carry its burden that it did not have a purpose to avoid income tax with respect to its shareholders. *United States* v. *Donruss Co.*, *supra*. We are reinforced in this conclusion by the further facts that petitioner was in a highly liquid position even prior to the sale of its business assets and this record is devoid of any evidence that, even in the absence of the sale, petitioner's accumulated earnings and profits would have been necessary for the reasonable needs of the business in which it had customarily engaged.

*Decision will be entered for the respondent.*

---

[2] We recognize that personal holding company status and failure to engage in business activities in later years standing alone would not be enough. However, these elements have a bearing, albeit peripheral, in determining the existence of the proscribed motive during the taxable year.

