T.C. Memo. 1996-235


UNITED STATES TAX COURT


AMW INVESTMENTS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3901-94.                    Filed May 22, 1996.


Robert E. Miller and Edith S. Thomas, for petitioner.

Alexandra E. Nicholaides and Eric R. Skinner, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  AMW Investments, Inc., petitioned the Court to
redetermine the following deficiencies in Federal income taxes,
additions to tax, and accuracy-related penalties determined by
respondent:

| Taxable Year Ended August 31 | Deficiencies | Additions to Tax | | Penalty |
| | | Sec. 6651(a)(1) | Sec. 6653(a) | Sec. 6662 |
| --- | --- | --- | --- | --- |
| 1989 | $656 | $164 | $6,615 | --- |
| 1990 | 20,000 | 5,000 | --- | $4,000 |
| 1991 | 36,133 | 9,033 | --- | 7,227 |

Following concessions, we must decide:

1.  Whether petitioner's payments to an escrow account (the Fund) are deductible as ordinary and necessary business expenses. We hold they are not.

2.  Whether petitioner's payments to its sole shareholder are deductible as interest.  We hold they are not.

3.  Whether petitioner is liable for the additions to tax for delinquency determined by respondent under section 6651(a)(1).  We hold it is.

4.  Whether petitioner is liable for the addition to tax for negligence or intentional disregard of rules or regulations determined by respondent under section 6653(a).  We hold it is.

5.  Whether petitioner is liable for the accuracy-related penalties for negligence or intentional disregard of rules or regulations determined by respondent under section 6662.  We hold it is.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.  We refer to Harry V. Mohney as Mr. Mohney.  We refer to petitioner's taxable

year ended August 31, 1989, as the 1988 taxable year.  We refer to petitioner's taxable year ended August 31, 1990, as the 1989 taxable year.  We refer to petitioner's taxable year ended August 31, 1991, as the 1990 taxable year.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. Petitioner's principal place of business was in Durand, Michigan, when it petitioned the Court. Petitioner filed a Form 1120, U.S. Corporation Income Tax Return, for each year in issue using a fiscal year ended August 31 and an accrual method of accounting. The 1988, 1989, and 1990 Forms 1120 were filed on August 15, 1991, March 6, 1992, and July 17, 1992, respectively.

Petitioner was incorporated on August 24, 1977, to purchase real property and to lease this property primarily to businesses engaged in adult entertainment. From its incorporation through August 31, 1988, petitioner was a wholly owned subsidiary of Dynamic Industries, Ltd. (Dynamic). During the subject years, Mr. Mohney owned all of petitioner's voting stock, and he was its president. At all times relevant herein, petitioner was a member of an organization of over 50 businesses that were engaged in the adult entertainment industry. All of these businesses were wholly or partially owned by Mr. Mohney, either directly or indirectly through various trusts.

In 1966, Mr. Mohney had started acquiring (and operating as sole proprietorships) numerous enterprises that were primarily engaged in adult entertainment. The assets of these enterprises

included theaters, bookstores, peep machines, wholesale novelty stores, film distributorships, and "showgirl" clubs. As Mr. Mohney's business dealings evolved over time and he began to gain greater notoriety, his reputation as a proprietor of adult entertainment establishments preceded him and affected the future expansion of his business operations into new communities. Mr. Mohney decided to purchase property through nominees due to his concerns that he would encounter legal problems if he purchased property in his own name. For example, his mother was the nominee when he purchased a movie theater in Mishawaka, Indiana (Mishawaka property), on December 1, 1969, for $45,000. Mr. Mohney paid for the Mishawaka property by giving the seller $13,500 in cash and agreeing to pay the balance (with interest at 7 percent) through monthly payments of at least $500.

On October 31, 1970, Mr. Mohney purchased a drive-in theater located in Clarksville, Indiana (Clarksville property), for $120,000, signing a $114,500 promissory note (Clarksville note). From 1970 to the time that he transferred the Clarksville property to petitioner, Mr. Mohney made payments on the Clarksville note.

In the early 1970's, Mr. Mohney organized each aspect of his business as a separate corporation. Mr. Mohney also established five domestic trusts, of which he and his four children were beneficiaries. Each of these trusts owned an interest in another

domestic trust, the Durand Trust, which owned all the stock of Dynamic, which owned many of Mr. Mohney's operating companies.

Shortly after petitioner's incorporation, Mr. Mohney transferred to it the Mishawaka property and the Clarksville property.[1] The transfer was not negotiated, and the deeds on the Clarksville property and the Mishawaka property were recorded on September 5, 1978 and March 21, 1980, respectively. In connection with the transfer, petitioner assumed liability on the Clarksville note, the principal of which was then $34,350. Petitioner also issued Mr. Mohney a promissory note for the Clarksville property (Second Clarksville note).[2] The Second Clarksville note stated that petitioner was to pay Mr. Mohney $120,000 on or before November 3, 1982. It set forth an interest rate of 10 percent, and it was signed by petitioner's then president. Petitioner made no payments of principal or interest to Mr. Mohney during the years 1977 through 1988 on the Second Clarksville note, and Mr. Mohney did not pursue collection of the note.

---

[1] Mr. Mohney's 1977 Federal income tax return did not report either transfer as a sale.

[2] Petitioner also alleges that it issued a $45,000 note to Mr. Mohney in connection with the transfer of the Mishawaka property. Petitioner did not produce any such note at trial, and no payments were made on the alleged note before 1989. The record does not indicate that Mr. Mohney attempted to pursue collection of any obligation from petitioner to him with respect to the Mishawaka property.

Around 1981, Mr. Mohney asked Janet Dingeman Fournier (Ms. Fournier) to serve as petitioner's president. Ms. Fournier served in this capacity until 1988. As petitioner's president, Ms. Fournier had no meaningful responsibility other than to sign tax returns and other documents on petitioner's behalf. Aside from Ms. Fournier, petitioner had no employees. Apart from the use of company cars, Ms. Fournier received no compensation from petitioner.

From 1974 through 1993, Ms. Fournier was also an employee of Modern Bookkeeping Services, Inc. (MBS). Mr. Mohney had formed MBS to handle and centralize the bookkeeping and tax preparation aspects of his businesses. Elizabeth L. Scribner (Ms. Scribner) was MBS' president and general manager. Thomas H. Tompkins (Mr. Tompkins) was MBS' accountant, and he was responsible for preparing petitioner's Federal income returns before the subject years. Lee J. Klein (Mr. Klein) provided legal services to MBS and MBS' clients.

Petitioner's financial affairs were maintained at MBS' office in Durand, Michigan, and MBS maintained all of petitioner's files, including its bank accounts, cash receipts journals, cash disbursements journals, and lease files. MBS paid petitioner's bills on behalf of it, and MBS prepared petitioner's financial statements. MBS charged petitioner a fee of $1,000 per month for its bookkeeping services.

In 1984, Federal agents, investigating a pattern of arsons at adult theaters, searched MBS' premises and seized books and records which included those of petitioner. In connection with this search, a grand jury, on September 9, 1988, handed down a seven-count indictment against Mr. Mohney, Ms. Scribner, Mr. Tompkins, and Mr. Klein (collectively referred to as the Defendants) for various criminal tax violations. The indictment generally charged that Mr. Mohney, through separate corporate tax returns, concealed his ownership of several adult-oriented businesses and filed false personal tax returns. The other defendants, who were all employees of MBS, were charged only in count I of the indictment. Count I charged the Defendants with conspiracy to defraud the Government through the concealment of ownership of the adult-oriented businesses on the tax returns, in violation of 18 U.S.C. sec. 371. The remaining counts charged Mr. Mohney with filing false individual income tax returns for the 1981, 1982, and 1983 taxable years (see sec. 7206(1)), and with aiding and assisting in the filing of false corporate income tax returns on behalf of Otis Mohney, Inc./International Amusements, Ltd. (see sec. 7206(2)). The remaining counts stemmed from the failure of International Amusements, Ltd., to report income it earned and diverted to Mr. Mohney for his personal benefit. All of the Defendants except Mr. Klein pleaded

guilty to the conspiracy charge.[3]  Mr. Mohney was subsequently convicted of the remaining charges, and his conviction was affirmed on appeal.  United States v. Mohney, 949 F.2d 1397 (6th Cir. 1991).

Petitioner and all of its related corporations jointly agreed to pay the legal fees of any officer, employee, or business associate called as a witness before the grand jury or any proceeding stemming therefrom.  The legal expenses that were claimed by petitioner (and that are in issue herein) were the amounts that it paid to the Fund, which was an escrow account that was established by MBS in 1985 to administer this agreement. The Fund was a separate, interest-bearing account.  MBS maintained the Fund's cash receipts journal, cash disbursements journal, and check book registers.  There were no written agreements prepared and signed contemporaneous to the establishment of the Fund.

Petitioner made monthly payments of $200 to the Fund. During petitioner's 1985 through 1990 taxable years, petitioner made payments to the Fund totaling $11,400.  During its 1989 taxable year, petitioner paid $1,948 to the Fund.  The amounts paid to the Fund were recorded by petitioner in a prepaid asset account and were not deducted by petitioner until the amounts

---

[3] Mr. Klein was later convicted of this charge.

were spent by the Fund.  As of September 1990, a total of $1,333,350 had been paid to the Fund by the various corporations.

David Shindel (Mr. Shindel) is a certified public accountant who was retained by Mr. Klein in 1987, on behalf of MBS and several of its clients, to review their corporate books and records for compliance with accounting practice and tax law. Upon reviewing petitioner's books, Mr. Shindel noticed the Second Clarksville note.  Mr. Shindel brought this note to the attention of Mr. Mohney, recommending that it be satisfied with accrued interest.  Mr. Shindel also recommended that the "note" on the Mishawaka property be satisfied with accrued interest.  During 1989 and 1990, petitioner paid Mr. Mohney the balance due on the Mishawaka and Clarksville properties plus accrued interest. Petitioner deducted $55,000 and $105,000 as interest on its 1990 and 1991 returns respectively.

Mr. Shindel prepared all of petitioner's Federal tax returns that are in issue herein.

OPINION

1.  <u>Legal Expenses</u>

We must decide whether petitioner may deduct its contributions to the Fund as ordinary and necessary business expenses under section 162(a).  Petitioner argues that it may. Petitioner contends that these contributions were tied directly to its business because the contributions were made to protect or

promote its business interest.  Respondent argues that the Fund paid the Defendants' personal expenses.  Petitioner bears the burden of proof.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

We agree with respondent that the contributions are not deductible under section 162(a).  Generally, a taxpayer may not deduct an expense of another person, <u>Deputy v. duPont</u>, 308 U.S. 488 (1940); <u>J. Cordon Turnbull, Inc. v. Commissioner</u>, 41 T.C. 358, 378 (1963), affd. 373 F.2d 87 (5th Cir. 1967); <u>Royal Cotton Mill Co. v. Commissioner</u>, 29 T.C. 761, 788 (1958), and may not deduct expenses which are personal in nature, sec. 262; <u>Johnson v. Commissioner</u>, 72 T.C. 340, 348 (1979).  An exception is found where the taxpayer pays for legal services rendered to another person, in order to protect or promote the taxpayer's business interests.  <u>Commissioner v. Tellier</u>, 383 U.S. 687 (1966) (corporation could deduct legal fees of another when the related litigation threatened the corporation's existence); <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943); <u>Gould v. Commissioner</u>, 64 T.C. 132, 134-135 (1975); <u>Lorhrke v. Commissioner</u>, 48 T.C. 679, 684-685 (1967); <u>Pepper v. Commissioner</u>, 36 T.C. 886, 895 (1961); <u>Catholic News Publishing Co. v. Commissioner</u>, 10 T.C. 73, 77 (1948).  The origin of the claim that gave rise to the legal fees, rather than the consequences of the underlying action, must be evaluated to

ascertain whether the fees are business or personal in nature. United States v. Gilmore, 372 U.S. 39 (1963).  The fact that legal fees are paid by a taxpayer on behalf of another person's criminal defense will not foreclose a deduction by the taxpayer when the alleged criminal activity relates to the taxpayer's trade or business.  See Commissioner v. Tellier, supra; Conforte v. Commissioner, 74 T.C. 1160, 1189-1190 (1980), affd, in part and revd. in part 693 F.2d 587 (9th Cir. 1982); Johnson v. Commissioner, supra at 347-348 (1979); cf. Pantages Theatre Co. v. Welch, 71 F.2d 68 (9th Cir. 1934) (corporation could not deduct legal expenses paid to defend its president and majority shareholder in defense of charges that he raped a prospective client of the corporation); Sturdivant v. Commissioner, 15 T.C. 880 (1950) (partnership could not deduct legal expenses paid to defend two of its partners and an employee charged with the murder of a business associate); Price v. Commissioner, T.C. Memo. 1973-65 (taxpayer could not deduct legal fees incurred by management consultant for criminal defense of the fraudulent sale of securities because consultant was not in the trade or business of selling securities).

In Lohrke v. Commissioner, supra at 688, the Court adopted a two prong test for determining when a taxpayer may deduct the legal expenses of another.  First, the Court looked to the purpose or motive that caused the taxpayer to pay the other

person's expense.  Deductibility will not be denied when the expense was incurred primarily for the payor's business, and any personal benefit conferred on the other party was merely incidental to the payor's objective.  Second, the Court considered whether the expenditure was an ordinary and necessary expense of the taxpayer's business.  We ask ourselves:  "Was the expenditure an appropriate expense to further or promote the payor's trade or business"?  Id.

With respect to the first prong, petitioner alleges that it stood to suffer direct and proximate adverse effects to its business as a result of the criminal investigation.  Petitioner argues that its contributions to the Fund were related to petitioner's business in that its records were seized during the search of MBS, its President was called to testify about its tax returns, its relationship to Mr. Mohney was close and direct, and it had a similar relationship with the other enterprises connected to the grand jury hearing.  Petitioner contends that it, not Mr. Mohney, was the primary beneficiary of the payments to the Fund, because the grand jury investigation and subsequent criminal proceedings threatened its corporate existence.  Petitioner contends that its contributions to the Fund were necessary to defend itself in proceedings in which its own tax and accounting practices may have been called into question.

We find petitioner's arguments unpersuasive. Although legal expenses related to the determination of Federal income taxes are deductible under section 162, see, e.g., Greene Motor Co. v. Commissioner, 5 T.C. 314 (1945), and a corporate taxpayer may deduct its expense of defending against criminal tax charges, see, e.g., Shapiro v. Commissioner, 278 F.2d 556 (7th Cir. 1960), affg. International Trading Co. v. Commissioner, T.C. Memo. 1958-104, petitioner has not persuaded us that the legal expenses in issue stem from a clear, direct, and proximate adverse effect upon it or its business. Petitioner was not a defendant in the criminal proceeding, and it was not named in the indictment. Rather, the indictment and the resulting prosecutions were limited to Mr. Mohney and the other Defendants. The charges did not arise from petitioner's business of leasing real property, and petitioner was not under the threat of criminal prosecution or forfeiture. See O'Malley v. Commissioner, 91 T.C. 352, 359 (1988); Matula v. Commissioner, 40 T.C. 914, 920 (1963); Sachs v. Commissioner, 32 T.C. 815, 820 (1959), affd. 277 F.2d 879 (8th Cir. 1960).

While there is a possibility that some of the claimed expenditures may have had some benefit to petitioner's business, petitioner has not shown this to be true. Put simply, petitioner

has failed to carry its burden of proof.[4]  Given the fact that the charges stemmed from the personal conduct of the Defendants, we are simply not persuaded that any of the payments made by petitioner to the Fund were petitioner's business expenses.[5]

## 2.  Interest Expense

Respondent disallowed petitioner's $160,000 interest deduction on the ground that the subject properties were contributed to petitioner's capital.  Petitioner argues that it may deduct the interest because it acquired the Mishawaka property and the Clarksville property from Mr. Mohney.

An accrual method taxpayer may deduct interest that has accrued within the taxable year on debt.  Sec. 163(a).  The term "debt" connotes an existing, unconditional, and legally enforceable obligation for the payment of money.  First Natl. Co. v. Commissioner, 289 F.2d 861 (6th Cir. 1961), revg. and remanding 32 T.C. 798 (1959).  Whether interest has accrued on debt is a factual determination.  Roth Steel Tube Co. v.

---

[4] Petitioner contends that a criminal conviction against Mr. Mohney would damage petitioner because he was indispensable to it.  We are unpersuaded.  Petitioner has not shown that it would have been inoperable as a result of Mr. Mohney's criminal conviction.  Petitioner has also presented no evidence that it suffered any business decline or any damage to its business relationships as a result of Mr. Mohney's prosecution and/or conviction.

[5] We also are not convinced that the expenses were ordinary and necessary.  Suffice it to say that petitioner has not proven that they were.

Commissioner, 800 F.2d 625 (6th Cir. 1986), affg. T.C. Memo. 1985-58; Smith v. Commissioner, 370 F.2d 178, 180 (6th Cir. 1966), affg. T.C. Memo. 1964-278; see Burrill v. Commissioner, 93 T.C. 643, 669 (1989). Courts refer to numerous factors to determine whether a payment is for debt or equity. The Court of Appeals for the Sixth Circuit, to which appeal in this case lies, refers primarily to eleven factors. See Roth Steel Tube Co. v. Commissioner, supra at 630. These factors are: (1) The names given to the instruments evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed interest rate and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and stockholder; (7) the security for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayment. Id.; Raymond v. United States, 511 F.2d 185, 190-191 (6th Cir. 1975); Austin Village, Inc. v. United States, 432 F.2d 741, 745 (6th Cir. 1970); Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. T.C. Memo. 1967-102; Smith v. Commissioner, supra at 180.

In distinguishing debt from equity, the economic substance of the transaction prevails over form.  Byerlite Corp. v. Williams, 286 F.2d 285, 291 (6th Cir. 1960).

We now analyze and weigh all relevant facts to determine whether petitioner and Mr. Mohney intended to create a debt, and whether their intention comported with the economic reality of a debtor-creditor relationship.  Petitioner carries the burden of establishing that the subject transfers generated debt rather than equity.  Rule 142(a).

### i.   Name of Certificate

We look to the name of the certificate evidencing purported debt to determine the "debt's" true label.  The issuance of a note weighs toward debt.  Estate of Mixon v. United States, 464 F.2d 394, 403 (5th Cir. 1972).  The mere fact that a taxpayer issues a note, however, is not dispositive of debt.  An unsecured note, with no payments made thereon until long after the due date, weighs toward equity.  Stinnett's Pontiac Serv. v. Commissioner, 730 F.2d 634, 638 (11th Cir. 1984), affg. T.C. Memo. 1982-314.

Although petitioner issued the Second Clarksville note to Mr. Mohney, we give this fact little weight.  The record shows that the transfer of the subject properties to petitioner occurred in 1977, yet the related deeds were not recorded until sometime thereafter.  We also find that Mr. Mohney's

1977 individual income tax return did not report a sale of either of the properties, and petitioner did not make any payments on either of the properties until 1989. Petitioner focuses on the fact that it recorded debt on its books in connection with the transfer. We are not impressed. Under the facts at hand, petitioner's accounting entry lends little (if any) support for a finding of debt. See Raymond v. United States, supra at 191. This is particularly true, given the fact that the parties did not deal at arm's length.

This factor is neutral.

### ii.  Fixed Maturity Date

The presence of a fixed maturity date weighs toward debt, but is not dispositive of a debtor-creditor relationship. American Offshore, Inc. v. Commissioner, 97 T.C. 579, 602 (1991). The presence of a fixed maturity date may be offset by other facts in the record.

Although the Second Clarksville note bore a maturity date of November 3, 1982, petitioner made no payments on this note until 1989. Petitioner also made no payments for the Mishawaka property until 1989. The timing of these payments indicates that a debtor-creditor relationship was not contemplated by petitioner and Mr. Mohney. The presence of the fixed maturity date on the Second Clarksville note is further downplayed by the fact that Mr. Mohney did not pursue collection or inquire as to payment.

Mr. Mohney testified that he simply forgot about the transaction and the debt owed to him.  We find this testimony unbelievable, and, even assuming arguendo that it was credible (which it was not), we find this testimony to be uncharacteristic of a bona fide creditor.

This factor weighs toward equity.

### iii.   Interest Rate and Payments

The presence of a fixed rate of interest and actual interest payments weigh toward debt.  The absence of payments in accordance with the terms of a debt instrument weighs toward equity.  Id. at 605.

Although the Clarksville note bore an interest rate of 10 percent, petitioner made no principal or interest payments to Mr. Mohney until 12 years after the transfer.  Petitioner also made no principal or interest payments to Mr. Mohney on the Mishawaka transfer until 12 years after the transfer.

This factor weighs toward equity.

### iv.   Repayment

Repayment that is dependent upon corporate earnings weighs toward equity.  Repayment that is not dependent on earnings weighs toward debt.  Roth Steel Tube Co. v. Commissioner, supra at 632; Lane v. United States, 742 F.2d 1311, 1314 (11th Cir. 1984); American Offshore, Inc. v. Commissioner, supra at 602.

Petitioner's ability to make payments on the subject properties depended primarily (if not solely) on the rental income from the properties. Immediate payment of the purported debt also does not seem to have been available from petitioner's existing assets which consisted primarily (if not entirely) of the subject properties.

This factor weighs toward equity.

v.   Capitalization

Thin or inadequate capitalization weighs toward equity. Roth Steel Tube Co. v. Commissioner, 800 F.2d at 632.

The record indicates that petitioner did not have meaningful equity either before or at the time Mr. Mohney transferred the subject properties to it.

This factor weighs toward equity.

vi.  Identity of Interest

Advances made by stockholders in proportion to their respective stock ownership weigh toward equity. A sharply disproportionate ratio between a stockholder's ownership percentage in the corporation and the debt owing to the stockholder by the corporation generally weighs toward debt. Id. at 630; Estate of Mixon v. United States, supra at 409; American Offshore, Inc. v. Commissioner, supra at 604. Mr. Mohney owned the subject properties immediately before their

transfer, and he effectively owned 100 percent of petitioner's equity at the time of the transfer.

This factor weighs toward equity.

### vii.   Presence or Absence of Security

The absence of security for purported debt weighs toward equity.  Roth Steel Tube Co. v. Commissioner, supra at 632; Lane v. United States, supra at 1317; Raymond v. United States, 511 F.2d at 191; Austin Village, Inc. v. United States, 432 F.2d at 745.

Mr. Mohney did not receive security for his transfer of the subject properties to petitioner.

This factor weighs toward equity.

### viii.   Inability to Obtain Financing

The question of whether a transferee could have obtained comparable financing is relevant in measuring the economic reality of a transfer.  Estate of Mixon v. United States, 464 F.2d at 410; Nassau Lens Co. v. Commissioner, 308 F.2d 39, 47 (2d Cir. 1962), remanding 35 T.C. 268 (1960).  Evidence that the taxpayer could not obtain loans from independent sources weighs toward equity.  Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 287 (1990).  We look to whether the terms of the purported debt were a "patent distortion of what would normally have been available" to the debtor in an arm's-length transaction.  See

Litton Business Sys., Inc. v. Commissioner, 61 T.C. 367, 379 (1973).

Petitioner presented no evidence on whether it could have obtained financing from an unrelated party at the time of the transfer, or on the order of priority of its debts. Given the fact, however, that the purported debts were completely unsecured and that the subject properties were petitioner's main asset, we are left unpersuaded that an unrelated third party would have entered into financing with petitioner under the terms that it alleges were entered into between it and Mr. Mohney.

This factor weighs toward equity.

### ix.   Subordination

Subordination of purported debt to the claims of other creditors weighs towards equity. Roth Steel Tube Co. v. Commissioner, supra at 631-632; Stinnett's Pontiac Serv. Inc. v. Commissioner, supra at 639; Raymond v. United States, supra at 191; Austin Village, Inc. v. United States, supra at 745.

Petitioner presented no evidence on the order of priority of its debts.

This factor weighs toward equity.

### x.  Use of Funds

The transfer of funds from a shareholder to a corporation in order to meet the corporation's daily business needs weighs toward debt. The transfer of funds from a shareholder to a

corporation in order to purchase capital assets weighs toward equity. Roth Steel Tube Co. v. Commissioner, supra at 632; Stinnett's Pontiac Serv. v. Commissioner, supra at 640; Raymond v. United States, supra at 191.

The subject properties were petitioner's initial and primary assets, and the purported notes represented a long-term commitment that was payable mainly from the future rental income from the properties. We also find relevant that Mr. Mohney was willing to go unpaid for many years so that petitioner could continue to enjoy the advantage of uninterrupted ownership of the properties.

This factor weighs toward equity.

### xi. Presence or Absence of a Sinking Fund

The failure to establish a sinking fund for repayment weighs toward equity. Roth Steel Tube Co. v. Commissioner, supra at 632; Lane v. United States, 742 F.2d at 1317; Raymond v. United States, supra at 191; Austin Village, Inc. v. United States, supra at 745.

The record does not indicate that petitioner established a sinking fund for the repayment of the purported notes. To the contrary, it appears that repayment was to come solely from petitioner's earnings.

This factor weighs toward equity.

xii.  Conclusion

Based on the above, we conclude that petitioner may not deduct the $160,000 that it claimed as an interest expense paid to Mr. Mohney.[6]

3.  Section 6651

Respondent determined additions to tax under section 6651(a)(1), asserting that petitioner failed to file timely Federal income tax returns.  In order to avoid this addition to tax, petitioner must prove that its failure to file timely was: (1) Due to reasonable cause and (2) not due to willful neglect. Sec. 6651(a); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Catalano v. Commissioner, 81 T.C. 8 (1983). A failure to file timely is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and, nevertheless, was unable to file the return within the prescribed time.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a conscious, intentional failure or reckless indifference.  United States v. Boyle, supra at 245.

---

[6] Even if we were to assume arguendo that Mr. Mohney and petitioner had intended to establish a debtor-creditor relationship ab initio, the record reveals that the character of that debt, as debt, vanished before the subject years and was equity during those years.  See Green Leaf Ventures, Inc. v. Commissioner, T.C. Memo. 1995-155; Frazier v. Commissioner, T.C. Memo. 1975-220.

Petitioner filed its 1988 and 1989 Forms 1120 almost 2 years past the due dates, and petitioner filed its 1990 Form 1120 more than 6 months late. Petitioner has not argued that it had reasonable cause for these late filings. Given the additional fact that the record does not otherwise establish reasonable cause for petitioner's late filings, we sustain respondent on this issue.

4. Section 6653(a)

Respondent determined that petitioner was liable for an addition to its 1988 tax under section 6653(a). Section 6653(a) applies when any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. For petitioner's 1988 taxable year, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the entire underpayment if any portion of the underpayment is attributable to negligence. Negligence connotes the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Given the fact that respondent determined that petitioner was negligent, petitioner must prove her wrong. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioner contends that it was unsophisticated about tax laws, and that it relied on MBS to provide Mr. Shindel with

enough information to ensure proper compliance with those laws. Although MBS failed to do its job properly, petitioner concludes, petitioner's reliance on them to do a proper job was consistent with ordinary business care and prudence under the circumstances.

We do not agree. Reasonable reliance on a tax adviser is consistent with ordinary business care and prudence only in certain cases. In those cases, the taxpayer must establish that: (1) The adviser had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. See, e.g., Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner, T.C. Memo. 1995-610. Mr. Shindel prepared and signed petitioner's tax returns for the years in issue. His experience and qualifications were sufficient to warrant reliance upon his judgement. Although it appears that petitioner has met the first prong, we find that it has failed to satisfy the remaining prongs. To the contrary, the record indicates that petitioner did not exercise due care, and it failed to do what a reasonable and ordinarily prudent person would have done under the circumstances. Petitioner claimed erroneous deductions for legal expenses and interest expenses. Petitioner also filed its tax returns untimely. In the latter regard, petitioner knew it was required to file timely a Federal

income tax return for each year in issue, but it neglected to do so. Given the fact that taxpayers have a statutory duty to file timely income tax returns, we believe that a reasonable and ordinarily prudent person would have complied with the statutory duty to file timely such a return. We also believe that breach of this duty is evidence of negligence. Condor Intl., Inc., v. Commissioner, 98 T.C. 203, 225 (1992), affd. in part and revd. in part 78 F.3d 1355 (9th Cir. 1996); Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). The fact that petitioner was negligent in the instant case is also supported by the fact that petitioner erroneously claimed deductions for the interest expenses and its shareholder's legal fees. See Condor Intl. Inc., v. Commissioner, supra at 225; Emmons v. Commissioner, supra at 349. We hold for respondent on this issue.

5. Section 6662

Respondent also determined that petitioner's underpayments of Federal income taxes for the 1989 and 1990 taxable years were due to negligence, and, accordingly, that they were subject to section 6662(a). Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence. See also sec. 6662(b)(1).

For purposes of section 6662(a), "negligence" includes a failure to make a reasonable attempt to comply with the Internal Revenue Code, and "disregard" includes careless, reckless, or intentional disregard.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Section 6664(c) provides a reasonable cause exception to the accuracy-related penalty under section 6662.

Petitioner argues that it is within the exception under section 6664(c).  Petitioner argues that it held an honest and good faith belief about the deductibility of its payments for legal fees and interest expense based on its reasonable reliance on MBS to ensure tax compliance.  For the same reasons discussed above, we disagree.  We sustain respondent on this issue.

We have considered all of petitioner's arguments for contrary holdings and, to the extent not addressed above, find them to be without merit.

To reflect concessions by respondent,

<u>Decision will be entered under Rule 155</u>.